BARRETT S. LITT (No. 45527)
blitt@mbllegal.com
KEVIN J. LaHUE (No.237556)
klahue@mbllegal.com
BEN SHAW (No. 319194)
bshaw@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

Attorneys for Plaintiffs ROSE ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF KERN, SHERIFF DONNY YOUNGBLOOD, COMMANDER MARK WARREN, BILL WALKER, NURSE BLANK, TINA MARIE GONZALES L.V.N., DEPUTY LAURA ESCOBAR (#203169), AND DOES 1-10, INCLUSIVE, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **(1) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, WRONGFUL DEATH;** <br> **(2) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, *MONELL* VIOLATIONS.** <br> **(3) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, SUPERVISORY LIABILITY;** <br> **(4) NEGLIGENCE;** <br> **(5) VIOLATION OF GOVERNMENT CODE §845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE** <br> **(6) VIOLATION OF THE ADA, 42 U.S.C. § 12101, and CALIFORNIA UNRUH ACT, CIVIL CODE §51** <br> **(7) VIOLATION OF CALIFRONIA CIVIL CODE §52.1;** |

**DECLARATION OF PLAINTIFFS PURSUANT TO (§377.60)**

**DEMAND FOR JURY TRIAL**

COMPLAINT

## I.   JURISDICTION AND VENUE

1.      This action is civil rights, wrongful death/survival action brought by Plaintiffs ROSA ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ pursuant to 42 U.S.C. § 1983.

2.      This Court has jurisdiction under 28 U.S.C. §1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983, and under 28 U.S.C. §1331.

3.      The acts and omissions complained of commenced on December 27, 2019, and continued until September 8, 2020, within the Eastern District of California. Therefore, venue lies in this District pursuant to 28 U.S.C. §1391.

4.      Plaintiffs timely filed an administrative claim with the County of Kern pursuant to Cal. Gov't Code §910.  The claim was denied on March 23, 2021.

## II.   PARTIES

5.      Plaintiff ROSA ELIA RODRIGUEZ is the mother, successor in interest, and an heir at law of Jose Luis Rodriguez, the deceased. Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. She brings this claim for herself personally, as Jose Luis Rodriguez's successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure §§377.30 and 377.60 which provide for survival and wrongful death actions.  Mrs. Rodriguez's declaration pursuant to §377.60 is attached hereto.

6.      Plaintiff SANTIAGO RODRIGUEZ is the father, successor in interest and an heir at law of Jose Luis Rodriguez, the deceased. Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. He brings this claim for himself personally, as Jose Luis Rodriguez's successor in interest and heir, as the personal representative of the estate and, as applicable, pursuant to California Code of Civil Procedure §§377.30

1
COMPLAINT

and 377.60 which provide for survival and wrongful death actions. Mr. Rodriguez's declaration pursuant to §377.60 is attached hereto.

7.     Defendant COUNTY OF KERN ("COUNTY") is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. The Kern County Sheriff's Office, and the Kern County Behavioral Health and Recovery Services, at all times herein alleged were agencies of the County of Kern.

8.     Defendant SHERIFF DONNY YOUNGBLOOD ("SHERIFF YOUNGBLOOD") was, at all times mentioned herein, the Sheriff for Kern County and in charge of the Kern County Jails including the Lerdo Pre-Trial Facility ("Lerdo") in Bakersfield, California where Jose Luis Rodriguez resided at the time of his suicide attempt.  SHERIFF YOUNGBLOOD has served as the Sheriff of Kern County from 2007 to the present.  By California law, the Sheriff is answerable for the safekeeping of inmates in his custody.  Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006.  SHERIFF YOUNGBLOOD was responsible for the management and control of all Kern County Jails, was responsible for the administration of Lerdo; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within Lerdo, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at Lerdo.  He was responsible for the care, custody and control of all inmates housed in Lerdo. SHERIFF YOUNGBLOOD is regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at Lerdo.  Pursuant to California law and his duties as the Sheriff of Kern County, SHERIFF YOUNGBLOOD is sued in his individual and official capacities, as a supervisor for his own culpable action or inaction in the

training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others, as well as for his role as a policy maker for the Jail's policies and custom or lack thereof.  SHERIFF YOUNGBLOOD's affirmative conduct involves his knowing, deliberately indifferent or reckless failure to ensure adoption of effective policies and guidance regarding mentally ill inmates in general, and suicidal inmates in particular, and his knowing, deliberately indifferent or reckless failure to ensure enforcement of meaningful and effective training, policies, rules or directives regarding such inmates. His conduct set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Jose Luis Rodriguez.

9.     Defendant BILL WALKER ("WALKER"), was at all times mentioned herein the Director of Kern County Behavioral Health and Recovery Services and in charge of Jail Mental Health operations in Kern County, including Lerdo where Jose Luis Rodriguez resided at the time of his suicide.  WALKER was responsible for the management and administration of mental health services at Lerdo; for the selection, promotion, supervision, training, discipline and retention of mental health workers working within Lerdo, including counselors, nurses, doctors, physician assistants, mental health staff and supervisors; and for the implementation of mental health policies and procedures at Lerdo.  WALKER was regularly provided with reports concerning the treatment of mentally ill inmates, jail suicides, and other violations involving the mental health care and treatment of inmates at Lerdo.  Pursuant to California law and his duties as the Kern County Behavioral Health and Recovery Services, WALKER is sued in his individual and official capacities, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that

showed reckless or callous indifference for others, as well as for his role as a policy maker for the Jail's mental health policies and custom or lack thereof. WALKER'S affirmative conduct involves his knowing, deliberately indifferent or reckless failure to ensure adoption of effective policies and guidance regarding mentally ill inmates in general, and suicidal inmates in particular, and knowing, deliberately indifferent or reckless failure to ensure meaningful and effective enforcement of training, policies, rules or directives regarding such inmates. His conduct set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Jose Luis Rodriguez.

10. COMMANDER MARK WARREN was at all times mentioned herein a member of the Kern County Sheriff's Office assigned to Lerdo, and was responsible for providing reasonable security and safety to the inmates, including Jose Luis Rodriguez, and for providing them access to mental health and medical care, treatment and intervention to prevent attempts of suicide by inmates, and reasonable screening, booking, and intake to identify inmates who posed a suicide risk. He is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others

11. Defendant NURSE BLANK was at all times mentioned herein a Kern County employee responsible for providing mental health and medical care, treatment and intervention to prevent attempts of suicide by inmates. She is sued in her individual capacity.

12. Defendant TINA MARIE GONZALES, L.V.N., was at all times mentioned herein a member of the Kern Behavioral Health and Recovery Services, and was responsible for providing mental health and medical care, treatment and

---
4
COMPLAINT

intervention to prevent attempts of suicide by inmates.  She is sued in her individual capacity.

13.   Defendant DEPUTY LAURA ESCOBAR (#203169) was at all times mentioned herein a member of the Kern County Sherriff's Office assigned to Lerdo, and was responsible for providing reasonable security and safety to the inmates, including Jose Luis Rodriguez, and for providing them access to mental health and medical care, treatment and intervention to prevent attempts of suicide by inmates, and reasonable screening, booking, and intake to identify inmates who posed a suicide risk.  She is sued in her individual capacity.

14.   Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 10, inclusive, were employees of the County of Kern, including but not limited to deputies and civilian staff of the Kern County Sheriff's Office, and employees of Behavioral Health and Recovery Services, and were at all relevant times acting in the course and scope of their employment and agency.  Each Defendant is the agent of the other.  Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

### III.   <u>GENERAL ALLEGATIONS</u>

15.   Plaintiffs  are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

16.   Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this complaint.

17.   The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

## IV.   FACTUAL ALLEGATIONS

### A.   Lerdo Pretrial Facility's Failure to Address Inmate Suicide

18.   Although the vast majority of the more than 2,000 prisoners housed in the Kern County jail system require mental health treatment, County officials have—for decades—failed to take adequate measures to prevent suicides.  From May 2001 to May 2006, approximately 135 prisoners attempted suicide in the Central Receiving ("CRF") or Lerdo facilities.  Ten years later, conditions had grown worse.  In the first five months of 2016, 20 inmates attempted suicide; two were successful in February 2016 alone.  But policymakers in both the Kern County Sheriff and the Kern County Behavioral Health and Recovery Services failed to address the problem—mental health intervention remained poor, and officials permitted conditions allowing suicide to grow more dire.

19.   In 2020, 185 prisoners attempted suicide, meaning that, on average, an inmate attempted suicide every other day.  Between January and October of 2020, approximately 50 of these were at Lerdo, and four were successful.  One of the four was Jose Luis Rodriguez.

### B.   Mr. Rodriguez's Known Suicidality

20.   At the time of his suicide, Mr. Rodriguez's struggle with his mental health—including previous suicide attempts—was both longstanding and known to Kern County and other Defendants as alleged herein.

21.   The events leading to Mr. Rodriguez's arrival at Lerdo stem from his April 2, 2018 "time served" sentence from the United States District Court for the Southern District of California.  As part of this sentence, the judge also ordered him to participate in mental health treatment and post-conviction supervision. Prior to imposition of sentence, Rodriguez had spent several months in the

COMPLAINT

Metropolitan Correctional Center in San Diego ("MCC").  Within days of arriving at San Diego's MCC, Mr. Rodriguez was diagnosed with multiple mental illnesses, including schizophrenia, and began a regimen of medication and counseling.  He also spent significant time on suicide watch.

22.   Upon release, Mr. Rodriguez returned to Bakersfield to live with his parents, but disappeared from home in January of 2019.  Soon after, he was arrested by the Selma Police Department and placed on a 72-hour hold for psychiatric evaluation.  This arrest did not result in a revocation of his supervised release; Mr. Rodriguez was instead given a mental health referral.

23.   On January 31, 2019, Mr. Rodriguez's parents brought him to the Kern County Medical Center, after witnessing him talking to himself and pulling chunks of hair from his head.  When staff asked him if he had plans to commit suicide, Mr. Rodriguez responded that he did, and planned to hang himself with a belt.

24.   On April 30, 2019, Mr. Rodriguez told his court-provided mental health provider that he had tried to hang himself the week before, but that the rope had not been strong enough to hold his body weight.  Mr. Rodriguez reported persistent suicidal thoughts—hearing voices telling him to kill himself, and said he continued to plan to hang himself.

25.   Over the next few months, Mr. Rodriguez's mental health continued to deteriorate.  He increasingly missed counseling appointments, took his medication less frequently, and began to miss appointments with his probation officer.  On December 10, 2019, his probation officer was sufficiently concerned to petition the Honorable Dale A. Drozd for a warrant for Mr. Rodriguez's arrest.  The officer noted that there was "great concern for [Mr. Rodriguez's] safety given his decompensated mental health and prior attempted suicide."  The warrant issued the next day.

/ / /

/ / /

### C.    Mr. Rodriguez First Comes to Lerdo

26.    On December 27, 2019, Mr. Rodriguez was arrested and booked into Lerdo.  Even though Mr. Rodriguez was brought into custody specifically because he was feared to be suicidal, no mental health referral issued when he was booked.

27.    On December 30, 2019, Mr. Rodriguez appeared in federal court, where the Honorable Jennifer L. Thurston ordered a forensic psychological evaluation to assess his competency, pursuant to 18 U.S.C. § 4241 (b).

28.    On December 31, 2019, Mr. Rodriguez finally received a screening from Kern County Behavioral Health and Recovery Services, the County's mental health provider for the facility.  Staff noted that Mr. Rodriguez had not been bathing, had a recent suicide attempt, and was experiencing intermittent suicidal ideation.  Mr. Rodriguez was not placed on suicide watch, but a psychiatric evaluation and counseling referral was made.

29.    Mr. Rodriguez's next mental health interaction took place on January 11, 2020, when staff were called because he had been making "bizarre statements." While the behavioral therapist's report indicated that Mr. Rodriguez denied being suicidal, the therapist also noted that Mr. Rodriguez was incapable of answering questions, was hallucinating, and was generally "incoherent."

### D.    Mr. Rodriguez Goes to the Metropolitan Detention Center for Psychiatric Evaluation

30.    On January 30, 2020—a month after his competency evaluation had been ordered—Mr. Rodriguez was transported to the Metropolitan Detention Center in Los Angeles ("MDC").  At MDC, he was screened and diagnosed with unspecified psychosis, major depressive disorder, insomnia, and adjustment disorder, among others.  Shortly after his arrival at MDC, Mr. Rodriguez was placed on suicide watch.  In the daily suicide watch contacts that followed, Mr. Rodriguez alternated between denying ideation and indicating that he would use a t-shirt to hang himself.  After several days of indicating that he was not suicidal,

Mr. Rodriguez was removed from suicide watch on February 12, 2020, and received continuing follow up visits, medication adjustments, and clinical interventions.

31.   On April 24, 2020, a forensic evaluation was completed and provided to the court.  It suggested that Mr. Rodriguez had "symptoms of a mental illness [that] are so prominent [they] will likely interfere with his ability to assist counsel in his defense."  The report recommended that Mr. Rodriguez be committed to a federal medical facility for restoration to competency.  On April 28, 2020, the Honorable Jennifer L. Thurston entered an order for Mr. Rodriguez to be hospitalized to determine whether there was a substantial probability he could attain capacity to permit proceedings to move forward.

### E.   Mr. Rodriguez's Return to Lerdo

32.   On August 19, 2020, Mr. Rodriguez was returned to Lerdo pending placement into a federal medical facility for competency restoration.  Despite his documented history of suicidal ideation, and the fact that he was returning to Lerdo specifically to await placement in a federal hospital for competency restoration—meaning his mental illness was so significant that he was incapable of assisting in his defense—his records did not generate an automatic mental health referral.  Booking officers similarly did not generate a mental health referral.  Medical staff did, however, note Mr. Rodriguez's medications, history of attempted suicide, and suicidal ideation, and, upon information and belief, left a telephone message with Kern Behavioral Health Services.  But because no policies or procedures were in place to ensure that mental health referrals were actually received and speedily processed, the referral went unaddressed.  Prison officials took no suicide precautions and provided no mental health treatment.  Mr. Rodriguez's mental health continued to deteriorate.

33.   The next day, Deputy Bradford Frizell was in Mr. Rodriguez's cell pod and was concerned to see that Mr. Rodriguez "was not comprehending what was

going on around him."  Deputy Frizell also noted that Mr. Rodriguez's greasy hair and foul body odor indicated he was not bathing.  Deputy Frizell approached NURSE BLANK, who told him that every time she interacted with Mr. Rodriguez, he appeared to be similarly oblivious.  Deputy Frizell made an additional Correctional Behavioral Health referral.  It, too, was not acted upon.  In the meantime, Mr. Rodriguez's previously-prescribed psychiatric medications expired, and his mental state grew more precarious.

34.  It was not until ten days after he arrived at Lerdo, on August 29, 2020, that any mental health staff attempted to see Mr. Rodriguez.  TINA MARIE GONZALES L.V.N., a licensed vocational nurse employed by Kern Behavioral Health and Recovery Services came to his unit, but indicated that, although she was "waiting and waiting," Mr. Rodriguez "would come to the door and stare" before walking back to his cell.  After the control office informed her Mr. Rodriguez "refused" to speak to Mental Health, Ms. GONZALES departed without speaking with Mr. Rodriguez, and, noting that his previously prescribed psychiatric medications had expired, indicating that she would place him "on the psych MD list for ASAP."  But no action was taken.

35.  Despite Mr. Rodriguez's history of suicide, interruption of medication and increasingly alarming behavior, officials failed to provide further mental health treatment, and took no suicide precautions.  Ms. GONZALES' single, non-interaction was the closest thing to a mental health intervention Mr. Rodriguez received between his August 19, 2020 return to Lerdo and his suicide on September 5, 2020.

36.  On September 5, 2020, DEPUTY LAURA ESCOBAR witnessed Mr. Rodriguez behaving oddly in the day room, doing a strange dance that did not appear to be in response to anything that was going on around him.  Later that day, at approximately 6:33 pm, Deputies LAURA ESCOBAR and DeGroot conducted cell checks.  DEPUTY ESCOBAR conducted the checks in the upper tier while

DeGroot checked the lower tier.  Deputy DeGroot checked Mr. Rodriguez's cell at 6:43pm, but did not report anything out of the ordinary to Deputy Escobar or anyone else.  DEPUTY ESCOBAR similarly reported nothing unusual (including her earlier interaction with Mr. Rodriguez in the day room) when it came time to change shifts.

37.  After a change in shift, the next cell check was conducted by Deputy Vanessa Deval at approximately 7:20 pm.  When Deputy Deval looked into Mr. Rodriguez's cell, she saw him hanging by a bedsheet from the top bunk of the cell. Deputy Deval requested that the cell door be opened, and entered the cell, and determined that Mr. Rodriguez was unresponsive, had blue hands, and no pulse. Written in pencil on top of the cell door were the words "I WANT TO KILL MYSELF."

38.  Deputy Deval used a Gerber strap cutter to cut Mr. Rodriguez out of the noose.  As Mr. Rodriguez's unconscious body fell to the floor, his head struck the concrete.  Deputy Fricano arrived and began chest compressions, which continued unsuccessfully until the Kern County Fire Department arrived and took over at approximately 7:43 pm.  Mr. Rodriguez regained a pulse at 8:04 pm, and was transported to Adventist Health-Bakersfield.  He died at the hospital on September 8, 2020.  He was 24 years old.

39.  In October 2020, a month after Mr. Rodriguez's suicide, the Kern County Sheriff's Office ("KCSO") first implemented the Inmate Stabilization and Assessment Team, or I.S.A.T.  According to KCSO, the program is designed to increase medical and mental health oversight at the Lerdo Jail. KCSO created a full-time position and assigned Detentions Senior Deputy Patrick McNeil, who has experience in helping inmates through treatment programs, to work as an advocate for inmate medical and mental health.

40.  Between October 2020 and June 2021, there were 24 suicide attempts at Lerdo Jail, approximately half the number of attempts compared to the ten-

month period before the I.S.A.T. was implemented.  None of the suicide attempts were deemed "serious," let alone successful.

## V.   PARTICIPATION, STATE OF MIND AND DAMAGES

41.   All Defendants acted illegally under color of law.

42.   Each individual Defendant participated in the violations alleged herein, and/or directed the violations alleged herein, and/or knew or should have known of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved, or acquiesced in the violations alleged herein.

43.   As joint actors with joint obligations, each individual Defendant was and is responsible for the failures and omissions of the other.

44.   Each individual Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

45.   Each Defendant acted with a deliberate indifference to, or reckless disregard for, an accused's rights to adequate mental health care in a custodial facility.

46.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Mr. Jose Luis Rodriguez suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life and loss of the enjoyment of life during the time period in which Kern County Sheriff's Office and Behavioral Health and Recovery Services failed to provide appropriate psychiatric care and treatment for his urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering during the hours preceding his suicide in September 2020. His estate, through Plaintiffs Santiago and Rosa Elia Rodriguez as representatives of his estate, seeks compensation for these damages to the extent available by law for each cause of action set forth herein.

47.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs Santiago

and Rosa Elia Rodriguez have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, apprehension, and pecuniary loss, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.  They seek compensation for these damages to the extent available by law for each cause of action set forth herein.

48.   Due to the acts of the Defendants, Plaintiffs have suffered, and continue to suffer, and are likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury, and pecuniary loss. For such injury, Plaintiffs will incur significant damages based on psychological and medical care. They seek compensation for these damages to the extent available by law for each cause of action set forth herein.

49.   As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of their son, Jose Luis Rodriguez, and the emotional impact on their family unit as a whole.

50.   The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each defendant other than Defendant COUNTY OF KERN in an amount to be proven at the trial of this matter.

51.   By reason of the acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5 and any other applicable provision of law.

52.    Each cause of action below is brought on behalf of both Plaintiffs Santiago and Rosa Elia Rodriguez individually, and on behalf of them jointly as representatives of the estate of Jose Luis Rodriguez.

## **FIRST CLAIM FOR RELIEF**

### **DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §1983 DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND SAFETY; WRONGFUL DEATH (Against All Defendants and DOES 1-10, Except Defendant COUNTY)**

53.    Plaintiffs reallege all foregoing and subsequent paragraphs as if fully set forth herein.

54.    Defendants acted with deliberate indifference for Jose Luis Rodriguez's serious medical needs and safety, in that they failed to provide adequate psychiatric treatment and intervention; failed to perform adequate suicide risk assessment and screening; ignored specific notice that he was suicidal; failed to appropriately administer prior prescribed psychiatric mediation; inappropriately assigned Jose Luis Rodriguez to housing despite clear indications that he required more intensive treatment and supervision; ignored and/or failed to reasonably monitor, to provide security, and to prevent Mr. Rodriguez from committing harm to himself; failed to provide medically-indicated psychiatric care and assessment; failed to ensure specific timelines for the provision of mental health care/assessment including referrals requested "ASAP" were implemented and/or followed; and ignored his serious but treatable mental health condition, even after delayed warnings were issued to Behavioral Health and Recovery Services.  Due to Defendants' deliberate indifference the demands of Mr. Rodriguez's serious, life-threatening mental state, Jose Luis Rodriguez suffered preventable serious injury and harm by hanging himself in his cell in September 2020.

55.    Jose Luis Rodriguez was subjected to deprivation of rights by these Defendants and DOES 1 through 10, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United

States, State of California, which rights included, but are not limited to, privileges and immunities secured to Jose Luis Rodriguez by the Fourth and/or Eighth and Fourteenth Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to be free from deliberate indifference to his serious but treatable condition while in custody and his right to timely and restorative treatment; and b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

56.   Plaintiffs allege that these Defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love and society of their son, all to their damage in an amount to be proven at trial according to proof.

## SECOND CLAIM FOR RELIEF

**DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. §1983
(Against Defendants COUNTY, YOUNGBLOOD and WALKER) – *MONELL*
VIOLATIONS**

57.   Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

58.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendant KERN COUNTY OF KERN and Defendants YOUNGBLOOD and WALKER in their official capacities, with deliberate indifference and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Jose Luis Rodriguez engaged in the unconstitutional conduct and omissions as specifically elaborated above.

59.   Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, Defendant COUNTY OF KERN, Kern County Sheriff's Department, and Behavioral Health and Recovery Services, and Defendants YOUNGBLOOD and KERN in their official capacities, with deliberate

indifference, and/or conscious or reckless disregard to the safety and constitutional rights of Jose Luis Rodriguez, and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted acquiesced in, and/or applied the policies, practices and customs set forth above.

60.   These policies, practices and customs include, but are not limited to: failure to provide adequate mental health services; failure to provide adequate suicide risk assessment and screening; failure to provide adequate housing and proper mental health classification for prisoners; failure to provide appropriate custodial supervision of inmates with mental health conditions despite a known history of suicide and attendant risk factors; failure to ensure that mental health housing and treatment spaces meet minimum safety design standards for facilities in which persons with serious mental illness are held; failure to provide adequate training and supervision of employees regarding identifying mental health issues and suicide risk; failure to ensure booking processes that alert mental health staff to suicidal prisoners; failure to ensure that mental health alerts from booking procedures are received and addressed in a timely manner; failure to ensure that mental health alerts from guards are received and addressed in a timely manner; failure to ensure that mental health alerts from mental health staff are received and addressed in a timely manner; failure to train staff to recognize and alert mental health staff of prisoners who pose a high risk of suicide; failure to obtain, consider and relay specific information of suicide risk obtained from outside sources, including law enforcement/corrections, probation warrants, court documents, and psychological histories; failure to ensure sufficient treatment space and staffing necessary to provide adequate mental health care; failure to ensure specific timelines for the provision of mental health care/assessment including referrals requested "ASAP" were implemented and/or followed; failure to appropriately document concerning behavior of inmates in shared incident reports; inadequate monitoring and assessment of inmates' mental health conditions; insufficient

mechanisms to ensure communication of relevant information between custodial, medical and mental health staff; failure to ensure appropriate suicide intervention measures; failure to provide adequate and competent medical and mental healthcare; and, failure to ensure adequate training and retention of information by correctional staff in identifying mental health and suicide risk issues as well as appropriate response to mental health issues; and otherwise failure to put into place and implement effective and needed mental health policies and practices, particularly as they relate to the potential for suicide by mentally ill jail inmates.

61.  Individual Defendants' wrongful conduct as the result of policies, practices, and customs to subject inmates of the Kern County Jails with mental health conditions to constitutionally deficient policies, practices and customs of Kern Sheriff's Department and Behavioral Health and Recovery Services, which permit and promote unsafe conditions for inmates leading to a heightened risk of suicide.

62.  At all times herein mentioned, the County of Kern and its Sheriff's Office, and Behavioral Health and Recovery Services authorized and ratified the wrongful acts of the individual Defendants. The actions and inactions of the Kern Sheriff's Department, including it custody staff, and Behavioral Health and Recovery Services were known or should have been known to the policy makers responsible for Kern County, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

63.  The actions of the Kern Sheriff's Office, including it custody staff, and Behavioral Health and Recovery Services set forth herein were a moving force behind the violations of Plaintiffs' and Jose Luis Rodriguez's constitutional rights as set forth in this complaint.

64.   As a direct and proximate result of Defendant COUNTY's policies, practices, and customs, Plaintiffs sustained injury and damages.

65.   As a result of Defendants', and each of their, violations of Plaintiffs' and Jose Luis Rodriguez's constitutional rights as set forth herein, Plaintiffs were damaged as alleged above

### THIRD CLAIM FOR RELIEF

**DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983**
**FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE**
**MEASURES CAUSING CONSTITUTIONAL VIOLATIONS**
**(Against Supervisory Defendants YOUNGBLOOD, WALKER and WARREN**
**INDIVIDUALLY and DOES 1-10)**

66.   Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

67.   Plaintiffs are informed and believe and thereon allege that Defendants YOUNGBLOOD, WALKER, WARREN and DOES 1-10 knew, or in the exercise of reasonable care, should have known of the history and propensity and pattern at the time of this incident for employees of the Kern County Jail to fail to provide reasonable security, monitoring, and supervision of inmates such as Jose Luis Rodriguez; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train (and insure adequate understanding and retention of training) and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as Jose Luis Rodriguez; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as Jose Luis Rodriguez, were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' constitutional rights.

68.     Plaintiffs are informed and believe and thereon allege that, prior to the incident alleged herein, Defendants YOUNGBLOOD, WALKER, WARREN and DOES 1-10, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

a.   Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Kern County with known mental disabilities;

b.   Failure to provide adequate housing and properly classify inmates in the Kern County Jails so that they would have access to and delivery of indicated mental health and medical care;

c.   Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

d.   Failure to prevent employee "burn out" and repetitive tasks, a known cause of failure to treat mental health issues in jails;

e.   Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

f.   Failure to receive and disseminate information regarding inmate mental health received from outside sources including transporting/arresting officers and family members to mental health or custody staff;

g.  Failure to adequately screen inmates for mental health issues or suicide risk upon booking; and

h.  Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

69.  Plaintiffs are further informed and believe and thereon allege that Defendants YOUNGBLOOD, WALKER, WARREN and DOES 1-10, knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 1-10 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of inappropriate conduct, and as a result Jose Luis Rodriguez was harmed in the manner threatened by the pattern or practice.

70.  At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

a.  To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

b.  To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

c.  To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or

20
COMPLAINT

potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

d.  To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

e.  To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f.  To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Kern County Jails;

g.  To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed;

h.  To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i.  To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of Jose Luis Rodriguez's and other inmate's constitutional rights;

j.  To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment;

k.  Not to discriminate against inmates with known mental health disabilities; and

l. To appropriately and disseminate information regarding an inmate's behavior from arresting/transporting officers and/or family members to appropriate custody and mental health staff.

71. As supervisors, Defendants SHERIFF YOUNGBLOOD, WALKER, and WARREN each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of Jose Luis Rodriguez. Each either directed his or her subordinates in conduct that violated Jose Luis Rodriguez's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Jose Luis Rodriguez of his rights, OR knew or should have known his subordinates were engaging in acts likely to deprive Jose Luis Rodriguez of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she knew or should have known would cause subordinates to violate Jose Luis Rodriguez's rights, and in fact did cause the violation of those rights. Furthermore, each is liable in their failures to intervene in their subordinates' apparent violations of Jose Luis Rodriguez's rights as a consequence of the policies, practices and customs set forth above.

72. As a legal result of the conduct of Defendants YOUNGBLOOD, WALKER, WARREN and Does 1-10, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

### FOURTH CLAIM FOR RELIEF

### NEGLIGENCE
**(Against All Defendants and DOES 1-10, Except Defendant COUNTY)**

73. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

74.    Defendants and DOES 1-10, had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment, and/or emergency services to Jose Luis Rodriguez for his mental health condition, to provide him with safe and appropriate custody, and to ensure that he was properly monitored, but Defendants breached their duty and were negligent in the performance of their duties and this negligence caused the death of Jose Luis Rodriguez.

75.    Defendants and DOES 1-10, acting within the course and scope of their employment with the Kern Sheriff's Department and Behavioral Health and Recovery Services and had a duty to assure the competence of their employee/agents Defendants and DOES 1-10, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents.  This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as Jose Luis Rodriguez.

76.    The individually named Defendants breached their duty of care to observe, screen, report, monitor and provide reasonable security regarding Jose Luis Rodriguez's condition and failed to prevent his suicide.

77.    As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Jose Luis Rodriguez, he was injured due to a serious but treatable mental health condition and Plaintiffs have suffered the damages as alleged above.

78.    As a legal result of the aforesaid negligence and unskillfulness of Defendants, Jose Luis Rodriguez's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and

treatment and his condition worsened and resulted in his suicide, and he suffered

serious injury and harm as a legal cause of the negligent conduct of Defendants,

thereby causing damage as alleged above.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOV'T CODE § 845.6
### (Against All Defendants Except Defendant COUNTY)

79.   Plaintiffs reallege all foregoing and subsequent paragraphs as if fully set forth herein.

80.   By virtue of the foregoing, Defendants, including but not limited to representatives of the Kern County Sheriff's Office and Behavioral Health and Recovery Services knew, or had reason to know, that Jose Luis Rodriguez needed intensive medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored, going forward from December 27, 2019; that on or before September 5, 2020 he needed immediate medical care and was not given such care.  Especially after having reasons to know that Jose Luis Rodriguez was suicidal, Defendants' failure to provide immediate medical care and mental health care while his mental condition was deteriorating, proximately caused his suicide.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF AMERICANS WITH DISABILITIES ACT (ADA), TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794, AND CALIFORNIA UNRUH ACT, CAL. CIVIL CODE §§51, et seq. (Against Defendant KERN COUNTY)

81.   Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

82.   Jose Luis Rodriguez was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with

Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. §794 and Cal. Civ. Code §51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements of the County of Kern and Kern Sheriff's Department's programs to provide mental/medical health care services for its inmate patients in the Kern Sheriff's Department.

83.   Defendant KERN COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code §51, et. seq., explicated by the regulations promulgated under each of these laws.

84.   Defendant Kern County mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

85.   Under the ADA, Kern County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities. . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

86.   Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).

87.   KERN COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

88.   Defendant KERN COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of … A department, agency, special purpose district, or other instrumentality of a State or of a local government.

89.   Defendant KERN COUNTY and other Defendants violated the ADA and the RA and Cal. Civ. Code §51, et seq., and deprived Jose Luis Rodriguez and Plaintiffs of their federally and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with KERN COUNTY's jails; (b) failing to provide services or accommodate Jose Luis Rodriguez with access to the programs and services of KERN COUNTY'S designated mental health facilities within Kern County Jails for persons who qualify for access and services under California and federal law; (c) failing to provide services or accommodate Jose Luis Rodriguez as indicated and with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled; (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities; (e) failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as Jose Luis Rodriguez; and (f) failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against Jose Luis Rodriguez, under the ADA and RA.

90.   Jose Luis Rodriguez was denied the benefits of the services, programs, and activities of KERN COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of

treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from self-harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was result in the violation of Plaintiffs' constitutional rights.

91.   As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Jose Luis Rodriguez died and Plaintiffs have suffered, are now suffering and will continue to suffer damages as alleged herein.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF Cal. Civil Code § 52.1 (Survival Claim)
### (Against All Defendants)

92.   Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

93.   Plaintiffs bring the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. § 377.20 et. seq.

94.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy as described above, while Jose Luis Rodriguez was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Plaintiffs' and Mr. Rodriguez's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

        a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Mr. Rodriguez's serious medical needs while in custody as secured by the Fourth

COMPLAINT

and/or Eighth and Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. Jose Luis Rodriguez's and Plaintiffs' right to familial association as secured by the First and/or Fourteenth Amendments.

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

e. The right to emergency medical care as required by California Government Code §845.6.

95.   Defendants' violations of Plaintiffs' and Jose Luis Rodriguez's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1]   Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violations of rights as described above, Defendants violated Jose Luis Rodriguez's rights by the following conduct constituting threat, intimidation, or coercion:

[1] *See M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013) ("Because deliberate indifference claims necessarily require more than 'mere negligence,' a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs...adequately states a claim for relief under the Bane Act."); *see also Atayde v. Napa State Hosp.*, No. 116CV00398DADSAB, 2016 WL 4943959, at *8 (E.D. Cal. Sept. 16, 2016) ("adopt[ing M.H.'s] analysis and find[ing] that threats, coercion, and intimidation are inherent in a deliberate indifference claim.")

a. With deliberate indifference to his serious medical needs, suffering, and risk of grave harm including death, depriving him of necessary, life-saving care for his medical and/or psychiatric needs;

b. Subjecting him to ongoing violations of his rights to prompt care for his serious medical and psychiatric needs over days, causing immense and needless suffering, intimidation, coercion, and endangering his life and well-being;

c. Forcing prisoners at high risk of suicide to remain in jail without competent mental health treatment, or any psychiatric treatment or treatment plan whatsoever, instead of allowing them to receive necessary emergency medical and psychiatric care;

d. Deliberately causing the provision of inadequate and incompetent medical and mental health care to jail detainees and inmates;

e. Choosing not to provide the required constant observation for inmates at high risk of suicide;

f. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, Jose Luis Rodriguez would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights.

96.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Jose Luis Rodriguez's rights, or to any legitimate and lawful jail or law enforcement activity.

97.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

98.   Further, each Defendant violated Plaintiffs' and Jose Luis Rodriguez's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

99.   Defendants are vicariously liable for the violation of rights by their employees and agents.

100. Defendant County is vicariously liable pursuant to California Government Code §815.2.

101. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of these rights under the United States and California Constitutions, Plaintiffs (as successors in interest for Jose Luis Rodriguez) sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, treble damages and civil penalties.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs ROSE ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ request relief on their own behalf, and on behalf of Jose Luis Rodriguez, as follows, and according to proof, against each Defendant:

1.     General and compensatory damages in an amount according to proof;

2.     Special damages in an amount according to proof;

3.     Exemplary and punitive damages against each Defendant, except the COUNTY OF KERN, in an amount according to proof;

4.      Costs of suit, including attorneys' fees, under 42 U.S.C. §1988, under the ADA, the Rehabilitation Act, California Code of Civil Procedure § 1021.5 and any other applicable provision of law; and,

5.      Such other relief as may be warranted or as is just and proper.


                                 Respectfully submitted,

                                 McLANE, BEDNARSKI & LITT, LLP

DATED:   September 21, 2021  By:   /s/   *Kevin J. LaHue*
                                 BARRETT S. LITT
                                 KEVIN J. LaHUE
                                 BEN SHAW
                                 Attorneys for Plaintiffs ROSE ELIA
                                 RODRIGUEZ, SANTIAGO RODRIGUEZ,
                                 AND THE ESTATE OF JOSE LUIS
                                 RODRIGUEZ


## **JURY DEMAND**

Trial by jury of all issues is demanded.


                                 McLANE, BEDNARSKI & LITT, LLP

DATED:   September 21, 2021  By:   /s/   *Kevin J. LaHue*
                                 BARRETT S. LITT
                                 KEVIN J. LaHUE
                                 BEN SHAW
                                 Attorneys for Plaintiffs ROSE ELIA
                                 RODRIGUEZ, SANTIAGO RODRIGUEZ,
                                 AND THE ESTATE OF JOSE LUIS
                                 RODRIGUEZ

COMPLAINT

BARRETT S. LITT (No. 45527)
blitt@mbllegal.com
KEVIN J. LaHUE (No.237556)
klahue@mbllegal.com
BEN SHAW (No. 319194)
bshaw@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

Attorneys for Plaintiffs ROSE ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ, AND THE ESTATE OF JOSE LUIS RODRIGUEZ,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>COUNTY OF KERN, SHERIFF DONNY YOUNGBLOOD, COMMANDER MARK WARREN, BILL WALKER, NURSE BLANK, TINA MARIE GONZALES L.V.N., DEPUTY LAURA ESCOBAR (#203169), AND DOES 1-10, INCLUSIVE,<br><br>                    Defendants. | Case No.:<br><br>**DECLARATION OF PLAINTIFF ROSA ELIA RODRIGUEZ PURSUANT TO (Cal Code Civ. Proc. §377.60); EXHIBIT 1 – DEATH CERTIFICATE** |

DECLARATION

In compliance with California Code of Civil Procedure § 377.32, Plaintiff Rosa Elia Rodriguez hereby declares as follows:

1.    That I am the mother of Jose Luis Rodriguez.

2.    That my son, Jose Luis Rodriguez, died on September 8, 2020 in Bakersfield, California.

3.    That no proceeding is now pending in California for administration of the  estate of my son, Jose Luis Rodriguez.

4.    That I am a successor in interest to my son's estate, as defined in Section  377.11 of the California Code of Civil Procedure, because I am a beneficiary of his estate.

5.    That my son, Jose Luis Rodriguez, did not leave a will, and did not father

any children.

6.    That I am therefore a beneficiary of his estate under California law, as set forth in California Probate Code § 6402(b).

7.    That I succeed to Jose Luis Rodriguez's interest in this action.

8.    That my husband, Santiago Rodriguez, is also a plaintiff in this matter and a successor in interest to my son's estate and that no other person has a superior right to commence the action or to be substituted for the decedent in the pending action or proceeding.

9.    Attached hereto as Exhibit 1 is a certified copy of the death certificate of my

DECLARATION

son, Jose Luis Rodriguez.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18 day of September 2021 in *Bakersfield ca* California

ROSA ELIA RODRIGUEZ

DECLARATION

**EXHIBIT 1**

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY of KERN
## PUBLIC HEALTH SERVICES DEPARTMENT
### 1800 MT. VERNON AVE., BAKERSFIELD, CALIFORNIA 93306-3302

**3052020212309**

STATE FILE NUMBER

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 3/06)

**3202015004849**

LOCAL REGISTRATION NUMBER

### DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| JOSE | LUIS | RODRIGUEZ |

AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR — Months / Days | IF UNDER 24 HOURS — Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| | 24 | | | M |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? YES [X] NO [ ] UNK | 12. MARITAL STATUS/RDP (at Time of Death) NEVER MARRIED | 7. DATE OF DEATH mm/dd/ccyy 09/08/2020 | 8. HOUR 24 Hours 1142 |
|---|---|---|---|---|---|
| CALIFORNIA | | | | | |

| 13. EDUCATION — Highest Level/Degree (see worksheet on back) SOME COLLEGE | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (If yes, see worksheet on back) [X] YES MEXICAN [ ] NO | 16. DECEDENT'S RACE — Up to 3 races may be listed (see worksheet on back) MEXICAN |
|---|---|---|

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED LABORER | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) AGRICULTURE | 19. YEARS IN OCCUPATION 5 |
|---|---|---|

### USUAL RESIDENCE

20. DECEDENT'S RESIDENCE (Street and number, or location)

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| BAKERSFIELD | KERN | 93304 | 12 | CALIFORNIA |

### INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP ALMA FLORES, COUSIN | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, zip) |
|---|---|

### SPOUSE/SRDP AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| - | - | - |

| 31. NAME OF FATHER/PARENT—FIRST SANTIAGO | 32. MIDDLE - | 33. LAST RODRIGUEZ | 34. BIRTH STATE MEXICO |
|---|---|---|---|

| 35. NAME OF MOTHER/PARENT—FIRST ROSA | 36. MIDDLE - | 37. LAST (BIRTH NAME) FLORES | 38. BIRTH STATE MEXICO |
|---|---|---|---|

### FUNERAL DIRECTOR/LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy 09/22/2020 | 40. PLACE OF FINAL DISPOSITION GREENLAWN MEMORIAL PARK SOUTHWEST 2739 PANAMA LANE, BAKERSFIELD, CA 93313 |
|---|---|

| 41. TYPE OF DISPOSITION(S) BU | 42. SIGNATURE OF EMBALMER ► ANGELA MILNER | 43. LICENSE NUMBER EMB7999 |
|---|---|---|

| 44. NAME OF FUNERAL ESTABLISHMENT GREENLAWN FUNERAL HOME SOUTHWEST | 45. LICENSE NUMBER FD1347 | 46. SIGNATURE OF LOCAL REGISTRAR ► KRIS LYON, MD | 47. DATE mm/dd/ccyy 09/21/2020 |
|---|---|---|---|

### PLACE OF DEATH

| 101. PLACE OF DEATH ADVENTIST HEALTH BAKERSFIELD | 102. IF HOSPITAL, SPECIFY ONE [X] IP [ ] ER/OP [ ] DOA | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE [ ] Hospice [ ] Nursing Home/LTC [ ] Decedent's Home [ ] Other |
|---|---|---|

| 104. COUNTY KERN | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) 2615 CHESTER AVENUE | 106. CITY BAKERSFIELD |
|---|---|---|

### CAUSE OF DEATH

107. CAUSE OF DEATH Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

IMMEDIATE CAUSE (Final disease or condition resulting in death)

(A) **HANGING**

Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST

(B)
(C)
(D)

| | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? [X] YES [ ] NO |
|---|---|---|---|
| (A) | | DAYS | Coroner's number: C02674-20 |
| (B) | | | 109. BIOPSY PERFORMED? [ ] YES [X] NO |
| (C) | | | 110. AUTOPSY PERFORMED? [X] YES [ ] NO |
| (D) | | | 111. USED IN DETERMINING CAUSE? [X] YES [ ] NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 NONE |
|---|

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? If yes, list type of operation and date.) NO | 113A. IF FEMALE, PREGNANT IN LAST YEAR? [ ] YES [ ] NO [ ] UNK |
|---|---|

### PHYSICIAN'S CERTIFICATION

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. Decedent Attended Since ___ Decedent Last Seen Alive ___ (A) mm/dd/ccyy (B) mm/dd/ccyy | 115. SIGNATURE AND TITLE OF CERTIFIER ► | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|

### CORONER'S USE ONLY

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH [ ] Natural [ ] Accident [ ] Homicide [X] Suicide [ ] Pending Investigation [ ] Could not be determined | 120. INJURED AT WORK? [ ] YES [X] NO [ ] UNK | 121. INJURY DATE mm/dd/ccyy 09/05/2020 | 122. HOUR (24 Hours) UNK |
|---|---|---|---|

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) LERDO-PRE TRIAL FACILITY |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) SELF INFLICTED LIGATURE HANGING |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) 17695 INDUSTRIAL FARM ROAD, BAKERSFIELD, CA 93308 |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER ► JOSE GOMEZ | 127. DATE mm/dd/ccyy 09/18/2020 | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER JOSE GOMEZ, DEPUTY CORONER |
|---|---|---|

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*010001004670580*

## CERTIFIED COPY OF VITAL RECORDS

**STATE OF CALIFORNIA** } SS **COUNTY OF KERN**

**DATE ISSUED**  SEP 2 2 2020

000738862

This is a true and exact reproduction of the document officially registered and placed on file in the office of the VITAL RECORDS SECTION OF THE DEPARTMENT OF PUBLIC HEALTH SERVICES.

KRIS LYON, M.D.
PUBLIC HEALTH OFFICER AND LOCAL REGISTRAR
OF BIRTHS AND DEATHS
This copy is not valid unless prepared on engraved border displaying seal and signature of Registrar.

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

CAKERN--01



1  BARRETT S. LITT (No. 45527)
   blitt@mbllegal.com
2  KEVIN J. LaHUE (No.237556)
3  klahue@mbllegal.com
   BEN SHAW (No. 319194)
4  bshaw@mbllegal.com
5  McLANE, BEDNARSKI & LITT, LLP
6  975 East Green Street
   Pasadena, California 91106
7  Tel: (626) 844-7660
8  Fax: (626) 844-7670

9  Attorneys for Plaintiffs ROSE ELIA RODRIGUEZ, SANTIAGO RODRIGUEZ,
10 AND THE ESTATE OF JOSE LUIS RODRIGUEZ

11              **UNITED STATES DISTRICT COURT**
12              **EASTERN DISTRICT OF CALIFORNIA**

13 | ROSE ELIA RODRIGUEZ,            | **Case No.:**
14 | SANTIAGO RODRIGUEZ, AND         |
   | THE ESTATE OF JOSE LUIS         | **DECLARATION OF PLAINTIFF**
15 | RODRIGUEZ,                       | **SANTIAGO RODRIGUEZ**
16 |                                  | **PURSUANT TO (Cal Code Civ.**
   |            Plaintiffs,           | **Proc. §377.60); EXHIBIT 1 –**
17 |                                  | **DEATH CERTIFICATE**
   |              vs.                 |
18 |                                  |
19 | COUNTY OF KERN, SHERIFF         |
   | DONNY YOUNGBLOOD,               |
20 | COMMANDER MARK                  |
   | WARREN, BILL WALKER,            |
21 | NURSE BLANK, TINA MARIE         |
22 | GONZALES L.V.N., DEPUTY         |
   | LAURA ESCOBAR (#203169),        |
23 | AND DOES 1-10, INCLUSIVE,       |
24 |                                  |
   |            Defendants.          |
25 

26

27

28
                          DECLARATION

In compliance with California Code of Civil Procedure § 377.32, Plaintiff Santiago Rodriguez hereby declares as follows:

1.     That I am the father of Jose Luis Rodriguez.

2.     That my son, Jose Luis Rodriguez, died on September 8, 2020 in Bakersfield, California.

3.     That no proceeding is now pending in California for administration of the estate of my son, Jose Luis Rodriguez.

4.     That I am a successor in interest to my son's estate, as defined in Section 377.11 of the California Code of Civil Procedure, because I am a beneficiary of his estate.

5.     That my son, Jose Luis Rodriguez, did not leave a will, and did not father any children.

6.     That I am therefore a beneficiary of his estate under California law, as set forth in California Probate Code § 6402(b).

7.     That I succeed to Jose Luis Rodriguez's interest in this action.

8.     That my wife, Rosa Elia Rodriguez, is also a plaintiff in this matter and a successor in interest to my son's estate and that no other person has a superior right to commence the action or to be substituted for the decedent in the pending action or proceeding.

9.     Attached hereto as Exhibit 1 is a certified copy of the death certificate of my son, Jose Luis Rodriguez.

DECLARATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18_ day of September 2021 in _Bakersfiel- Ca_ California

_Santiago Rodriguez_

SANTIAGO RODRIGUEZ

DECLARATION

# EXHIBIT 1

# STATE OF CALIFORNIA

## CERTIFICATION OF VITAL RECORD

# COUNTY of KERN

## PUBLIC HEALTH SERVICES DEPARTMENT

1800 MT. VERNON AVE., BAKERSFIELD, CALIFORNIA 93306-3302

**3052020212309** — STATE FILE NUMBER

## CERTIFICATE OF DEATH
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV. 3/06)

**3202015004849** — LOCAL REGISTRATION NUMBER

### DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| JOSE | LUIS | RODRIGUEZ |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| | 24 | | | M |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? YES / [X] NO / UNK | 12. MARITAL STATUS/RDP (at Time of Death) NEVER MARRIED | 7. DATE OF DEATH mm/dd/ccyy 09/08/2020 | 8. HOUR 24 Hours 1142 |
|---|---|---|---|---|---|
| CALIFORNIA | | | | | |

| 13. EDUCATION – Highest Level/Degree (see worksheet on back) SOME COLLEGE | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (If yes, see worksheet on back) [X] YES MEXICAN / NO | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) MEXICAN |
|---|---|---|

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED LABORER | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) AGRICULTURE | 19. YEARS IN OCCUPATION 5 |
|---|---|---|

20. DECEDENT'S RESIDENCE (Street and number, or location)

### USUAL RESIDENCE

| 21. CITY BAKERSFIELD | 22. COUNTY/PROVINCE KERN | 23. ZIP CODE 93304 | 24. YEARS IN COUNTY 12 | 25. STATE/FOREIGN COUNTRY CALIFORNIA |
|---|---|---|---|---|

### INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP ALMA FLORES, COUSIN | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, zip) |
|---|---|

### SPOUSE/SRDP AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| - | - | - |

| 31. NAME OF FATHER/PARENT—FIRST SANTIAGO | 32. MIDDLE - | 33. LAST RODRIGUEZ | 34. BIRTH STATE MEXICO |
|---|---|---|---|

| 35. NAME OF MOTHER/PARENT—FIRST ROSA | 36. MIDDLE - | 37. LAST (BIRTH NAME) FLORES | 38. BIRTH STATE MEXICO |
|---|---|---|---|

### FUNERAL DIRECTOR/LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy 09/22/2020 | 40. PLACE OF FINAL DISPOSITION GREENLAWN MEMORIAL PARK SOUTHWEST 2739 PANAMA LANE, BAKERSFIELD, CA 93313 |
|---|---|

| 41. TYPE OF DISPOSITION(S) BU | 42. SIGNATURE OF EMBALMER ▶ ANGELA MILNER | 43. LICENSE NUMBER EMB7999 |
|---|---|---|

| 44. NAME OF FUNERAL ESTABLISHMENT GREENLAWN FUNERAL HOME SOUTHWEST | 45. LICENSE NUMBER FD1347 | 46. SIGNATURE OF LOCAL REGISTRAR ▶ KRIS LYON, MD | 47. DATE mm/dd/ccyy 09/21/2020 |
|---|---|---|---|

### PLACE OF DEATH

| 101. PLACE OF DEATH ADVENTIST HEALTH BAKERSFIELD | 102. IF HOSPITAL, SPECIFY ONE [X] IP / ER/OP / DOA | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE Hospice / Nursing Home/LTC / Decedent's Home / Other |
|---|---|---|

| 104. COUNTY KERN | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) 2615 CHESTER AVENUE | 106. CITY BAKERSFIELD |
|---|---|---|

### CAUSE OF DEATH

107. CAUSE OF DEATH — Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

IMMEDIATE CAUSE (Final disease or condition resulting in death)
(A) HANGING

Sequentially list conditions, if any, leading to cause on Line A. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST
(B)
(C)
(D)

| | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? [X] YES / NO |
|---|---|---|
| (A) | DAYS | C02674-20 |
| (B) | | 109. BIOPSY PERFORMED? YES / [X] NO |
| (C) | | 110. AUTOPSY PERFORMED? [X] YES / NO |
| (D) | | 111. USED IN DETERMINING CAUSE? [X] YES / NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 NONE |
|---|

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? If yes, list type of operation and date) NO | 113A. IF FEMALE, PREGNANT IN LAST YEAR? YES / NO / UNK |
|---|---|

### PHYSICIAN'S CERTIFICATION

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
Decedent Attended Since ___ mm/dd/ccyy ___ Decedent Last Seen Alive ___ mm/dd/ccyy ___
(A) ___ mm/dd/ccyy ___ (B) ___ mm/dd/ccyy ___

115. SIGNATURE AND TITLE OF CERTIFIER ▶

116. LICENSE NUMBER / 117. DATE mm/dd/ccyy

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE

### CORONER'S USE ONLY

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH – Natural / Accident / [X] Suicide / Homicide / Pending Investigation / Could not be determined | 120. INJURED AT WORK? YES / [X] NO / UNK | 121. INJURY DATE mm/dd/ccyy 09/05/2020 | 122. HOUR (24 Hours) UNK |
|---|---|---|---|

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) LERDO-PRE TRIAL FACILITY |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) SELF INFLICTED LIGATURE HANGING |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city and zip) 17695 INDUSTRIAL FARM ROAD, BAKERSFIELD, CA 93308 |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER ▶ JOSE GOMEZ | 127. DATE mm/dd/ccyy 09/18/2020 | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER JOSE GOMEZ, DEPUTY CORONER |
|---|---|---|

| STATE REGISTRAR | A | B | C | D | E | *010001004670580* | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|

CAKERN--01

---

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA } ss
COUNTY OF KERN

**DATE ISSUED**   SEP 2 2 2020

000738862

This is a true and exact reproduction of the document officially registered and placed on file in the office of the VITAL RECORDS SECTION OF THE DEPARTMENT OF PUBLIC HEALTH SERVICES.

KRIS LYON, M.D.
PUBLIC HEALTH OFFICER AND LOCAL REGISTRAR
OF BIRTHS AND DEATHS

This copy is not valid unless prepared on engraved border displaying seal and signature of Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE